UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MOHAMMED APHU,

          Petitioner,

     v.                                                23-CV-731-LJV
                                                          DECISION & ORDER
MERRICK GARLAND, *et al.*,

          Respondents.

_____

     In March 2022, United States Citizenship and Immigration Services ("USCIS")

denied the application for naturalization filed by the petitioner, Mohammed Aphu, after

determining that Aphu had not been lawfully admitted.  Docket Item 2-1 at ¶ 2.  On July

21, 2023, Aphu commenced this action for judicial review of the denial of his application.

Docket Item 1 at 2.[1]  Aphu asserts that he was lawfully admitted; in the alternative, he

argues that the government improperly denied him the opportunity to request a waiver

under 8 U.S.C. § 1182(k) and 8 C.F.R. § 1212.10 ("section 212(k) waiver").  *See* Docket

Item 1 at ¶¶ 8-15.[2]  Aphu urges the Court to find that he was lawfully admitted or grant

him a section 212(k) waiver on due process grounds, and therefore to "[o]rder USCIS to

grant [him] citizenship by naturalization."  *Id.* at 7-8.

_____

    [1] Page numbers for docket citations refer to ECF pagination.

    [2] The government, in its discretion, may grant a section 212(k) waiver to admit a
noncitizen who did not know that he or she was inadmissible before coming to the
United States.  8 U.S.C. § 1182(k).

After the respondents moved to dismiss the complaint, Docket Item 8, and Aphu responded, Docket Item 9, this Court heard oral argument, Docket Item 13.[3]  For the reasons that follow, the Court grants the motion to dismiss.

## BACKGROUND[4]

On April 18, 2014, Aphu's father, a United States citizen, applied for a visa for Aphu to come to the United States as the unmarried child of a citizen.  Docket Item 2-1 at ¶ 4.  On January 20, 2015, Aphu was issued an F11 visa at the American embassy in Dakar as an unmarried son of a U.S. citizen.  *See id.* and Docket Item 2-5 at 2.  The visa explicitly says that Aphu's marital status is "SNG"—that is, single.  Docket Item 2-5 at 2.  On February 1, 2015, however, Aphu was married in Bangladesh.  Docket Item 2-1 at ¶ 4.  Four days later, on February 5, 2015, he was admitted at a port of entry in the United States with the F11 visa.  *Id.*

Aphu's wife has since come to the United States and became a naturalized citizen.  Docket Item 2-1 at ¶ 10 and Docket Item 2-4 at 2.  The couple has two children who were born in the United States in 2017 and 2020.  Docket Item 2-4 at 3-4.

---

[3] Before oral argument, the government filed a notice of supplemental authorities. Docket Item 11.  This Court permitted Aphu to submit a written response to the supplemental authorities.  He submitted a response that did not address the authorities but instead corrected a reference from oral argument and repeated his earlier arguments.  *See* Docket Item 14.

[4] In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  The following facts are taken from Aphu's petition as well as an affidavit and exhibits submitted with the petition.  *See* Docket Items 1 and 2.

On December 9, 2019, after living in the United States for almost five years, Aphu applied for naturalization.  Docket Item 2-1 at ¶ 6.  On February 2, 2021, he appeared for an interview with USCIS to determine his eligibility.  Docket Item 2-6 at 2. A little more than a year later, USCIS determined that Aphu was not eligible for citizenship because he had not been lawfully admitted for permanent residence.  *Id.*

Aphu requested and was given a hearing before USCIS.  Docket Item 2-1 at ¶ 8. He asserted that he had entered the country lawfully, and that if he had not, he qualified for a section 212(k) waiver.  Docket Item 2-6 at 3.

On April 12, 2023, a USCIS Field Office Director reaffirmed the denial of Aphu's naturalization application.  *Id.* at 2-4.  The director explained that lawful admission as a permanent resident is a prerequisite for naturalization and found that Aphu had not been lawfully admitted because he had entered with a visa for which he did not qualify based on his marital status.  *Id.* at 3.

The director also found that Aphu did not qualify for a waiver because he had not requested one when he applied for admission at a port of entry.  *Id.* at 3-4.  "[B]ecause you are no longer an applicant for admission, regulation requires that you request a waiver under INA § 212(k) before an immigration judge.  There is no legal basis which provides for USCIS to grant a waiver under INA § 212(k) nunc pro tunc."  *Id.* at 4.  The director reiterated that "a request for a waiver under INA § 212(k) must be made either as an applicant for admission, or in the event the request is denied, before an immigration judge."  *Id.*

Aphu then sought judicial review of USCIS's denial of his application for naturalization.  Docket Item 1.

## LEGAL PRINCIPLES

### I.    REVIEW OF NATURALIZATION DECISIONS

Congress gave sole authority over naturalization to the United States Attorney General, 8 U.S.C. § 1421(a), who has delegated that authority to USCIS, *Rivera v. U.S. Citizenship and Immigration Servs.*, 5 F. Supp. 3d 439, 441 (S.D.N.Y. 2014).  But if USCIS denies an application and upholds that decision on administrative appeal, the applicant may seek review in district court under 8 U.S.C. § 1421(c).  *Escaler v. U.S. Citizenship and Immigration Servs.*, 582 F.3d 288, 291 (2d Cir. 2009).  The statute requires the district court to review the denial of naturalization "de novo," to "make its own findings of fact and conclusions of law," and, "at the request of the petitioner, [to] conduct a hearing de novo on the application."  8 U.S.C. § 1421(c).

### II.    MOTION TO DISMISS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

A district court properly dismisses an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) if the court lacks the statutory or

constitutional power to adjudicate it.  *Makarova v. United States*, 201 F.3d 110, 113 (2d

Cir. 2000).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by

a preponderance of the evidence that it exists."  *Id.*

## **DISCUSSION**

### I.  **PROPER RESPONDENT**

A party must bring a petition for review against USCIS and must serve the

petition upon the Department of Homeland Security and the USCIS office where the

hearing was held.  8 C.F.R. § 336.9(b).  Aphu did not name USCIS as a respondent but

instead named the Attorney General and the director of USCIS.  Docket Item 1.  Aphu

therefore did not name the correct respondent.

The government contends that dismissal is an appropriate remedy for Aphu's

failure to name USCIS.  Docket Item 8-1 at 9-10.  In his response, Aphu requests leave

to amend his complaint to reflect the correct respondent.  Docket Item 9 at 4.  And if

naming the incorrect respondent were the only defect in Aphu's petition, the Court

would grant that relief.  But in addition to that error, Aphu also fails to state a plausible

claim for relief and this Court lacks jurisdiction over the waiver issue.  Because the

Court dismisses the petition on those grounds, Aphu's motion to amend is denied as

moot.

### II.  **LAWFUL ADMISSION**

When Aphu arrived in the United States, he was admitted as the unmarried child

of a United States citizen.  But just four days earlier, Aphu had been married in his

native country, Bangladesh.  Therefore, USCIS correctly determined that Aphu was ineligible for naturalization because he had not been lawfully admitted.

Applicants for citizenship must strictly comply with all requirements.  *Fedorenko v. United States*, 449 U.S. 490, 506 (1981).  Indeed, applicants have the burden to show their eligibility for citizenship "in every respect."  *I.N.S. v. Pangilinan*, 486 U.S. 875, 886 (1988); 8 U.S.C. § 1429 ("The burden of proof shall be upon [the applicant] to show that he entered the United States lawfully.").  And those requirements are strictly enforced.  *Fedorenko*, 449 U.S. at 506-07.

One prerequisite for naturalization is lawful admission.  More specifically, applicants for naturalization must be "lawfully admitted for permanent residence, within the United States for at least five years."  8 U.S.C. § 1427(a), *see also id.* § 1429 (absent an exception, "no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter").  "The natural reading of 'lawful' connotes more than just procedural regularity; it suggests that the substance of an action complied with the governing law."  *De La Rosa v. U.S. Dep't of Homeland Sec.*, 489 F.3d 551, 554 (2d Cir. 2007).

If a noncitizen fails to comply with all substantive legal requirements when he or she is admitted to the United States for permanent residence, then he or she is deemed never to have obtained lawful permanent resident status.  *Id.* at 554-55.  That applies even if the noncitizen mistakenly believed that he or she was admissible.  *Villafana v. Holder*, 358 F. App'x. 245, 246-47 (2d Cir. 2009) (summary order); *see De La Rosa*, 489 F.3d at 554-55.  Likewise, the government's mistaken admission of an inadmissible

person does not make the admission lawful.  *See, e.g.*, *Lai Haw Wong v. Immigration and Naturalization Servs.*, 474 F.2d 739, 742 (9th Cir. 1973); *Shtykova v. Holder*, 2012 WL 1004906, at *4 (E.D.N.Y. Mar. 22, 2012) (applying rule in context of government's mistaken admission of someone who had a visa for an unmarried daughter but was married).

A visa for an unmarried person is valid only if the person is "unmarried," a term that, "when used in reference to any individual as of any time, means an individual who at such time is not married."  8 U.S.C. § 1101(a)(39); *see, e.g.*, *Shtykova*, 2012 WL 1004906 at *4; *cf.* 22 C.F.R. § 42.72(d) (consular office must warn a person issued a visa as an unmarried daughter or son of a citizen that she or he "will be admissible as such an immigrant only if unmarried at the time of application for admission at a U.S. port of entry").  And if "at the time of application for admission," the applicant does not have a "valid" visa, the applicant is inadmissible.  8 U.S.C. § 1182(a)(7)(A)(i).

In light of these principles, several courts have held that when a married person enters the country with a visa for an unmarried person, he or she did not comply with the substantive legal requirements for admission and therefore has not been lawfully admitted.  *Shtykova*, 2012 WL 1004906, at *4; *Ijomah-Nwosu v. Holder*, 2015 WL 5097925, at *2 (D.N.J. Aug. 31, 2015); *Camara v. Chertoff*, 2008 WL 80933, at *7 (N.D. Cal. Jan. 7, 2008); *Abdulla v. U.S. Citizenship and Immigration Servs.*, 2009 WL 1069122, at *1 (E.D. Cal. April 21, 2009); *see Daniel v. District Director*, 2015 WL 1097375, at *9 (S.D.N.Y. March 12, 2015) (holding that someone who was married while seeking approval for adjustment of status was no longer an "immediate relative"

and therefore had not been lawfully admitted).  Aphu has not cited any authority to the contrary, nor has this Court found any.

Aphu therefore was not lawfully admitted when he came to the United States. His F11 visa was based on his status as the unmarried child of a U.S. citizen.  *See* 8 U.S.C. § 1153(a)(1) and Docket Item 2-5 at 2.  But Aphu was married when he arrived here.  Docket Item 1 at ¶ 2.

Aphu argues that his entry was lawful because "by operation of law he was admissible as an F-31 visa holder"—a married child of a citizen, 8 U.S.C. § 1153(a)(3)— when he entered.  Docket Item 14 at 4.  This Court disagrees.

A person's preference classification automatically converts when the person's marital status changes:  "A currently valid petition previously approved to classify the beneficiary as the unmarried son or daughter of a United States citizen under section 203(a)(1) of the Act shall be regarded as having been approved for preference status under section 203(a)(3) of the Act as of the date the beneficiary marries.  The beneficiary's priority date is the same as the date the petition for classification under section 203(a)(1) of the Act was properly filed."  8 C.F.R. § 204.2(i)(1).  So Aphu's F11 visa petition technically converted to an approved petition for a married child of a U.S. citizen when he married.

But that does not mean that he was admitted under that approved petition.  As a matter of law, USCIS is deemed to have approved Aphu's petition, which "results not in getting a visa then and there, but only in getting a place in line."  *See Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 47 (2014).  The number of visas that can be issued per year within each family preference category is capped, and demand often exceeds

supply.  *Id.* at 48; *see id.* at 50 ("After a sponsoring petition is approved but before a visa application can be filed, a family-sponsored immigrant may stand in line for years—or even decades—just waiting for an immigrant visa to become available.").  Each month, the Department of State sets a cut-off date for each category, and visas are available for people with priority dates before the cut-off.  *Id.* at 48.

So when an applicant's priority date is before the cut-off date, a visa becomes available, meaning that the applicant is "eligible to apply for a visa."  *Id.* at 62.  The applicant then must file a visa application and demonstrate his or her admissibility.  *Id.* at 48-49 (explaining that, for example, an applicant cannot have serious health problems or a conviction for certain crimes, and the U.S. citizen who filed the original petition must provide an affidavit of support).  A consular official then reviews the application, schedules an in-person interview, and determines whether the applicant should receive a visa under the relevant family preference category.  *Id.* at 49.

Aphu should have followed that process and applied for admission as a married noncitizen—more specifically, the married child of a United States citizen.  But he did not.  Had he done so, he would have had to wait for the correct cut-off date for married children of citizens, file an F31 visa application, attend an interview, and receive an F31 visa.  Aphu does not contend, nor has he attempted to demonstrate, that he took these steps.  He therefore did not enter lawfully with an F31 visa.

For all those reasons, Aphu's argument that he was lawfully admitted lacks merit.

## III.  SECTION 212(K) WAIVER

In the alternative, Aphu says that even if he was not lawfully admitted, he has a procedural due process right under the Fifth Amendment to pursue a section 212(k)

waiver.  Docket Item 1 at ¶¶ 12-13.  And he asks this Court to grant him a section 212(k) waiver; in fact, he says that this Court "must" do so.  *Id.* at ¶¶ 13 and 15.  But this Court lacks jurisdiction to do that.

The relevant statute, 8 U.S.C. § 1182(k), provides:  "Any alien, inadmissible from the United States . . . who is in possession of an immigrant visa may, if otherwise admissible, be admitted in the discretion of the Attorney General if the Attorney General is satisfied that inadmissibility was not known to, and could not have been ascertained by the exercise of reasonable diligence by, the immigrant before the time of departure of the vessel or aircraft from the last port outside the United States and outside foreign contiguous territory or, in the case of an immigrant coming from foreign contiguous territory, before the time of the immigrant's application for admission."[5]

A related regulation, titled "Section 212(k) waiver," provides:  "Any applicant for admission who is in possession of an immigrant visa, and who is excludable under sections 212(a)(14), (20), or (21) of the Act, may apply to the district director at the port of entry for a waiver under section 212(k) of the Act.  If the application for waiver is denied by the district director, the application may be renewed in exclusion proceedings before an immigration judge as provided in part 1236 of this chapter."  8 C.F.R.

---

[5] "[T]he Homeland Security Act of 2002 mandates that references to the Attorney General are deemed to include DHS [("Department of Homeland Security")] where, as here, the relevant agency functions have been transferred from the Department of Justice to DHS."  *Shabaj v. Holder*, 718 F.3d 48, 51, n.3 (2d Cir. 2013); *see Ajlani v. Chertoff*, 545 F.3d 229, 231, n.2. (2d Cir. 2008) (Congress transferred authority to adjudicate applications for naturalization from the Attorney General to DHS).  USCIS is a unit of DHS.  *Shabaj*, 718 F.3d at 51, n.3.  The government explains that "Attorney General" therefore can be replaced with "USCIS" in the statute.  Docket Item 8-1 at 13, n.2.

§ 1212.10.  In removal proceedings, immigration judges "shall have the authority" to "determine applications" under section 212(k).  *Id.* § 1240.1(a).

Finally, 8 U.S.C. § 1252(a)(2)(B)(ii) provides:  "Notwithstanding any other provision of law (statutory or nonstatutory) . . . and regardless of whether the judgement, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title."

In light of those laws and regulations, this Court lacks jurisdiction to review USCIS's waiver decision in this case.  When reviewing denials of naturalization applications, district courts lack jurisdiction to review section 212(k) waiver issues.  *Abdulla*, 2009 WL 1069122, at *1; *see Patel v. Garland*, 596 U.S. 328, 336-40 (2022) (interpreting a different subsection of the jurisdiction-stripping provision broadly).  That is because a section 212(k) waiver is discretionary:  A person "may" be admitted "in the discretion" of government actors if the government actors are satisfied that the person meets certain criteria.  8 U.S.C. § 1182(k).  If Aphu had requested and been denied a wavier when he entered the United States, this Court would lack jurisdiction to review that discretionary decision.  And USCIS's determination that it could not grant a section 212(k) waiver was a "decision" about this discretionary waiver.  The jurisdictional bar therefore applies, "[n]otwithstanding any other provision of law," 8 U.S.C. § 1252(a)(2)(B)—that is, the bar applies regardless of the district court's authority to review naturalization decisions generally under 8 U.S.C. § 1421(c).  And that

jurisdictional bar precludes this Court from reviewing Aphu's section 212(k) waiver issue.

Aphu cites 8 U.S.C. § 1252(a)(2)(D), an exception to the jurisdiction-stripping rule, but that exception does not apply.  *See* Docket Item 9 at 2.  The exception allows "an appropriate *court of appeals*" to review constitutional claims or questions of law. 8 U.S.C. § 1252(a)(2)(D) (emphasis added).  Under the plain language of the statute, as well as Second Circuit precedent, the exception applies only to petitions before courts of appeals, not to petitions before district courts.  *Shabaj v. Holder*, 718 F.3d 48, 51 (2d Cir. 2013).[6]  The 8 U.S.C. § 1252(a)(2)(D) exception therefore does not apply here.

This Court lacks jurisdiction to review USCIS's decision regarding a discretionary section 212(k) waiver.

## IV.    ALTERNATIVE PATHS TO CITIZENSHIP

At oral argument, the government noted that Aphu may have other options to gain citizenship but that those options would take time and ultimately may not be successful.  For example, Aphu can ask USCIS for a discretionary adjustment of status under subdivision (a) of 8 U.S.C. § 1255.  That provision allows noncitizens who were "inspected and admitted," like Aphu, to apply to be "lawfully admitted for permanent

---

[6] *Shabaj* involved a section 212(i) waiver, which is a discretionary waiver for admission based on extreme hardship to a person's family.  *See id.* at 50; 8 U.S.C. § 1182(i).  The Second Circuit explained, "while *this court* would have jurisdiction to review any constitutional claims or questions of law properly raised in a petition for review, the *district court* did not have jurisdiction to review Shabaj's challenge to CIS's discretionary hardship determination."  *Shabaj*, 718 F.3d at 51.  Two other district courts that had exercised jurisdiction to review purported errors of law in hardship determinations "never addressed or acknowledged, as they should have" the narrow application of the exception to courts of appeals.  *Id.* at 52.

residence." *See id.* Aphu then would need to wait and apply for naturalization again.[7]

Of course, there is no guarantee that Aphu will be naturalized if he pursues these

options.  But this decision does not appear to be the end of the road.

## CONCLUSION

In light of the above, the respondents' motion to dismiss, Docket Item 8, is

GRANTED.  The Clerk of the Court shall close the case without further order.

SO ORDERED.

Dated:   July 30, 2024
         Buffalo, New York


  */s/ Lawrence J. Vilardo*
  LAWRENCE J. VILARDO
  UNITED STATES DISTRICT JUDGE

---

[7] Aphu countered that USCIS would reject any such application because he already had lawful permanent resident status.  But counsel for USCIS represented that he had talked with USCIS about this and that it indeed was a potential option.  Counsel also said that there was almost no chance that the government would pursue removal proceedings against Aphu.